The next case on our calendar this morning is number 19-2726, Dushan Ashley v. City of New York. We have Mr. Rickner to begin. Yes, Your Honor. Can you hear me? Yes, I can. Judge Calabresi, can you hear? Yes, but if it happens that I get cut off, when I come back on, I will say that I was cut off and I will ask you to re-argue the last couple of minutes because that can happen. Thank you. Of course, Your Honor. Please proceed, Mr. Rickner. Thank you. May it please the Court. I represent Dushan Ashley. Now, this case circles around a material false statement. Defendant Detective Mike Civil executed a search warrant on non-party Charles Patrick's one-bedroom apartment shortly before 5 a.m. Detective Civil found another non-party, Jose Carlos, sleeping in the living room in a sleeping bag next to two ounces of marijuana. Ashley arrives 13 minutes later. Now, later that night, Detective Civil signed a criminal court complaint that said that the marijuana he found was next to both Mr. Ashley and Mr. Carlos in the living room. He knew this was a false statement, but he signed it under oath and he faxed it back to the prosecutor without saying, this has a mistake or this is false. This set the criminal case in motion. Now, opposing counsel refers to... Hang on one minute. I mean, there's a false arrest claim as well, correct? But his statement didn't bear on whether there was probable cause for the arrest because it was made after the arrest and the arrest was based on the circumstances in the apartment when Detective Civil arrived and his prior visits. Is that correct? Do you agree with that? Well, I partially agree with that. I think that the false statement shows Detective Civil's state of mind and, in fact, greatly calls his credibility into question. Now, it's true that he does come up with all of these other facts to indicate that this is Mr. Ashley's room. Most of this shows up in litigation after Mr. Ashley had testified under oath. And the question for false arrest is, what did Detective Civil know at the time when he was making the arrest? And I would submit to you that... Judge, Judge Calabresi, go ahead. Can you hear me? Yes, I can. I'm trying to agree with you that simply arriving there and with a question of doubt as to whether he had been there before because, that is, that his statements are of dubious value because of the false statement. But what about the fact that someone had called and said that someone who met Mr. Ashley's description was in that room and was dealing drugs? Is that sufficient to give probable cause? No, Your Honor, because that occurred a good distance earlier before the raid. Now, Mr. Ashley did live there at one point beforehand, or at least he sometimes slept in the living room. But, and this is important, Detective Civil and his team had been watching the apartment for a significant period of time. And I think that it's fair for a jury to assume that they knew that Ashley had left that apartment and had moved into more stable housing with his girlfriend. And because of that, I think it's fair for a jury to say, no, this isn't necessarily relevant to the facts of what they found at the time of the raid. But he left his head behind and other personal effects. So he may have been sleeping in both places from time to time. That doesn't mean he didn't have dominion and control over what was left behind necessarily in terms of objective standard for arresting. Well, again, this depends on what the Detective Civil actually knew at the time. What you are saying is that if one doesn't believe Detective Civil, then there is no reason for Detective Civil to know that those possessions that were there actually belonged to Ashley. Exactly. And that's a credibility determination. And in a false arrest case in particular, the burden, you know, we know that Ashley was arrested without a warrant that named him. So the burden is on Detective Civil. And what the district court did was take an element where Detective Civil had the burden and, in fact, make all of these credibility findings in his favor. And I believe that was inappropriate. I'm sorry, could you just clarify whether there was probable cause for the arrest and then we have the malicious prosecution and, you know, Detective Civil's participation in that through his false statement. But I see those as potentially different standards that get applied and his – and a different impact. Maybe you could clarify for me what the impact of his false statement is on malicious prosecution in particular. You would say that that provides a basis for inferring intent to prosecute maliciously. Is that right? Yes, Your Honor. And I would also say we also have a fair trial claim, which I would like to discuss as well. But going into the malicious prosecution claim, I actually think that Detective Civil's in an even worse position. Because if you look at the Boyd case, in order to have probable cause to initiate a prosecution, you must have some reason to believe that the prosecution will be successful. And if you look at New York Law… Excuse me. Excuse me. I was cut off for the last minute and a half. I don't know what is happening. Oh, I'm sorry. Let's go back. We were talking about malicious prosecution and the impact of Detective Civil's misstatements and what one can infer from them as to the arrest, the false arrest claim versus malicious prosecution. Why don't you go ahead? We'll add some time to your allotment, Mr. Rickner. Thank you, Your Honor. Yes, I think that for Detective Civil's side of the argument, he's in an even worse position for malicious prosecution. Because following the Boyd case, in order to have probable cause to initiate a prosecution, you must have some reason to believe that that prosecution would be successful in a New York criminal court. And here we have a purely circumstantial case. This is very rare. The only evidence of possession is purely circumstantial. And if you go through the cases from the Court of Appeals and from some of the lower courts, it is clear that finding drugs in somebody's house in a common room like this will not sustain a prosecution. Meaning that the case is ultimately going to be dismissed. Now, it is true that maybe it plays out, and maybe that the prosecutor takes a shot at it. But if you look at the criminal court judge in this case, he really lectured the district attorney about this and said, look, we dismiss all of these cases right at arraignment. You can't control who brings what into the house. And he was talking about this underlying New York law that says you can't have a successful, purely circumstantial prosecution unless you can prove to a moral certainty that the underlying fact of possession is true. And here the drugs were next to Jose Carlos. They were Jose Carlos' drugs. On the malicious prosecution account here, my understanding is that our circuit has generally required a favorable termination of the underlying criminal prosecution. And that a dismissal for facial insufficiency is not generally treated as a favorable termination. Am I wrong in my understanding, or why is Mr. Ashley's case different if I am correct? How does it merit a termination? Well, you look at all of the circumstances, and I think that's what Lanning teaches. And this is different from an ordinary facial insufficiency case where they can go back, the prosecutor can go back… Counsel, are you saying that the law of our circuit is that facial insufficiency is not by itself enough, but if the circumstances around facial insufficiency suggested that what was going on was more of a merit, that is enough? What do you cite for that? Murphy, or what cases do you cite for that? Well, I would say – I think that's slightly different than what I'm saying. What I'm saying is that this was a dismissal with prejudice, and that is what distinguishes it from an ordinary facial insufficiency dismissal where it's not with prejudice. Here, the judge said you can – the case is dismissed. The case is sealed. You have to appeal. I mean this was a dismissal with prejudice, and that's what sets it aside from the ordinary favorable termination – or excuse me, from the ordinary facial insufficiency determination that was being ruled on before. And I would like to discuss the fair trial claim if I may because I think that's an entire other set of considerations that aren't covered by probable cause, if that's okay. We'll take another couple minutes because Judge Calabresi was cut off earlier, so you need to repeat. So please go ahead. Take two more minutes. All right. Well, thank you very much, Your Honor. I think that in the context of all of these facts we've been discussing, materiality was established as a matter of law, meaning that the false statements that Mr. Ashley was next to the marijuana was likely to influence a jury's decision-making process. Now, it doesn't matter that the criminal court complaint isn't admissible evidence because what a criminal court complaint does is it's a signal. It's an affidavit. It tells the prosecution and the court and the defense, at trial, I will get on the stand and I will testify to the fact. Even if that were so, and I'm not sure, was the deprivation of liberty, which is essential on a fair trial, established as a matter of law when your client did not establish the number of times that he came for this case as against the earlier case? Well, I believe that he did establish it. His attorney testified that there were three… Well, did he establish it as a matter of law? Did he do it sufficiently so that that would be established as a matter of law as against one of the things that the jury would have to find? Yes. There were… His criminal defense attorney, who is a non-party, testified that Mr. Ashley went to court solely to defend against the false charges three separate times. That was never impeached. In fact, it was acknowledged in the summary judgment motion, and they said maybe it was even four times. So I believe in that sense causation was established as a matter of law, and it was also established because this is exactly what Detective Civil set in motion. When he signs the false complaint and provided it to the prosecution knowing full well that it was going to the court, that was the document that was hanging over Mr. Ashley's head for all of the court appearances, including the ones that he solely had to make. Could you address the instructions to the jury, and I don't mean the generic ones which you did not object to, but the specific question about that a writing error is not fabrication, and whether that instruction was misleading given the fact that there was an admission of knowledge about the mistake or non-mistake fabrication? I mean, I think to address it is to say that Your Honor is exactly right, that by providing this instruction, and this really goes into all of the problems of the materiality instruction, saying that this is essentially telling the jury that a fair review of the evidence is to say this was a typo is fundamentally wrong. In fact, our position is that materiality should have been charged to the jury by saying the statement must be material, and that has been established as a matter of law, just like we do lots of other elements of claims like saying that the color of law element has been established as a matter of law. And this was, in fact, specifically requested by trial counsel, and because of this uncertainty and the fact that they charged the jury with materiality even though that wasn't really in question, defense counsel jumped into it and said that the criminal court defense attorney, quote, ended his client's claims when he admitted that the criminal court complaint was inadmissible. Now, this is squarely against the law, and in fact, it doesn't matter that the criminal complaint is inadmissible. It's the fact that the detective civil said I will testify to this by submitting it to the prosecution. And so we have an inaccurate statement of the law regarding what Your Honor provided and even the fact that you can charge materiality over counsel's objection that was explicitly exploited by defense counsel in summation. So even if you don't think I made it to a directed verdict, this certainly warrants a retrial on the issue. All right. We have kept you past your time. You have two minutes of rebuttal. We'll hear from the city, please. Good morning, Your Honor. Good morning, Your Honors. Good morning. So I'll start with the fair trial claim, and I'll start with the jury instructions, which is where opposing counsel ended. The simple fact was materiality was contested, and when elements are contested and have not been ruled on by the district court, it's appropriate to give an instruction. That's not – that's a distinction from, for example, the color of law example that opposing counsel referred to. Usually, color of law is stipulated to, and that's why certain elements such as that are not included. Counsel? Yes. Yes. If materiality was contested, then it's appropriate to give an instruction with respect to materiality. But was an instruction which said that if this was a typo, then it wasn't – then it doesn't matter. Is that a correct instruction, given the fact, the admission that Detective Civil knew about the error, knew that it had been done, that it wasn't – in other words, that it was not a typo? So bringing up a typo could be argued to be a misleading instruction to the jury. And while there wasn't any specific objection to that in the charging conference, which I've gone back and read, the objection to that was pretty clear. So, yes, Judge Calabresi, that is still an appropriate instruction, because even opposing counsel, even Ashley, acknowledges that a defendant must know that the information is inaccurate or is false. But he did. He said. He said that it was false. So why wasn't that something that was not in dispute? And why was the paperwork or typo-type instruction required? Yeah, I mean, if somebody – if it cannot have been paperwork or typo, then saying to a jury, by the way, if it is paperwork or typo, it's okay, is a misleading instruction. If there were no paperwork, to bring in paperwork would be misleading. And if this couldn't have been a typo because he said, I knew what was going on, then saying it was a typo would be misleading, wouldn't it? I mean, where am I off? So, Your Honor, it's important to remember there are multiple statements that were issued at the trial, and that Detective Sittle conceded on one statement but contested the accuracy of the other statement, which was the description of what Mr. Ashley said when he entered the apartment. And so it was important to give instructions that covered both of those statements and the evaluation of both of those statements. Well, wouldn't that have been – shouldn't that have been made clear if there was one statement as to which it was – it might have been a typo? I mean, I'm still not clear what that statement would be because the statement that he said about strangers in the place, that – I'm not sure that anybody argues whether that's a typo or not. But leave that aside. Even if there were two different statements, wouldn't the correct instruction have to say there were things as to which it could not be a typo? You must decide whether they were material or not. Let's agree with you for the moment that materiality is an open question, which I'm kind of inclined to agree. But separate that from the others so that the jury wouldn't think – wouldn't be able to conclude that even as to the question of whether Ashley was there and the marijuana was found on his person, that that could not have been a typo. I don't think that's error, Your Honor. The district court has discretion in how it words instructions as long as they're legally correct. And it had to address both statements that Mr. Ashley was contesting were false. And of course, if the falsity of the first statement were overwhelming or conceded or what have you, then there would have been no prejudice. It was conceded that it was false. I mean, it was conceded that he was not there when Detective Civil came in and that the marijuana was not on him. So a statement of a contrary was false. I mean, there's no question. Am I wrong about that? Certainly, you're right that Detective Civil conceded that that was an inaccurate statement. That's completely – that's correct. Well, inaccurate is a misstatement in itself. It wasn't inaccurate. It was wrong. There's a difference between inaccurate, which says, I thought I saw him or didn't or something, and a statement which said he was there when he knew he wasn't there. Detective Civil understood that to be a slight discrepancy in the complaint. And so that's what I was referring to. But to get to the second point with regard to the instruction, if that's the case, Your Honor, then there would have been no prejudice to such an instruction in any case. And this court is charged with looking at jury instructions as a whole and judging whether any error was made. Your argument is that while this may have been – you don't concede it – but while this may have been an inaccurate description, it wasn't enough to mislead the jury to any degree. Yes, Your Honor, with regard to the paperwork instruction, which I think you focused on. Then turning to the materiality point, both with regard to the instruction, but then ultimately what was the evidence that meant that this was contested, this court is clear that to show materiality in these fair trial claims, the evidence – the information must be likely to influence a jury's decision. And this has been emphasized multiple times, for example, in the Bellamy case. And here the criminal complaint, which contained that one sentence, could not go to a jury. Both the – Detective Civil himself testified that this was not – So I would read it – I would answer your question in two ways. First, it has to at least impact the evidentiary record that would have gone to a hypothetical jury. Then secondly, I would say even if in some circumstances or in some cases you could point to a criminal complaint and say, if possible, that would have affected a hypothetical jury's evidentiary record, here this civil jury had specific evidence that that would not have done so here. They had the testimony of Detective Civil acknowledging that that was not an accurate description and his testimony that he explained to the prosecutor's office twice that that – the accurate account of what happened with Mr. Ashley's arrest. And so here the jury had evidence specifically about this case that would lead it to – that could have led it to conclude that this statement was not material to a hypothetical criminal jury's consideration in Mr. Ashley's case. So could you address the – we've kept you on this very long, but could you address the probable cause both for the arrest and for the possible malicious prosecution and whether there was probable cause as a matter of law, because summary judgment was given, given the fact that Civil's credibility was significantly contested by the fact that he made this what you call inaccurate and I've called a misstatement? Yes, Your Honor. At summary judgment, there was significant evidence and uncontested evidence in the record that Mr. Ashley did have dominion over that room. Mr. Ashley testified to it in a deposition, a non-party witness – go ahead. He testified that because he testified that he knew because he had been there years before that the – this was his room and those were his possessions. And of course, if that was true, then there's no question that there is probable cause. But if the misstatement, which you call inaccurate, is enough to cast doubt on any testimony that Ashley made, then isn't it a question of fact? That is, if the jury does not believe Ashley that he had been – I'm sorry, does not believe Civil that he had been there before, then there is no probable cause. No, Your Honor. Here I'm focusing on – Doesn't that become a fact question? No, Your Honor. Here's why. I'm focusing on plaintiff Mr. Ashley's testimony at this moment. Mr. Ashley testified and acknowledged that he had left things and pets in the room that was searched. That's true. That's true. But how do we know that Civil knew that at the time he went there? Objectively, that is what the basis of probable cause. Probable cause is not exposed. Probable cause is examined. How did Civil know at the time that he arrested Ashley that these were his possessions if one doesn't believe Civil's statement that he had been there before? So the question is, was Civil's statement that he was there before believable as a matter of law, given the fact that there was this other, you call inaccuracy? And maybe it is, but I think that that's the issue. Your Honor, I would say that statement is still believable. One, it's uncontested that Mr. Ashley was in fact arrested twice in that same apartment, I think less than – November and December 2012, so less than six months ago before the arrested issue here. Yes. And so there was that piece of evidence. There was the tip concerning a man meeting Mr. Ashley's description, using that apartment for what was described as drug dealing. Now you're relying on something else, and that is this tip. Is this tip – how do we know about this tip? Does this also come in through Mr. Civil's statement, or was this tip established in some other way? It was independently corroborated, Your Honor. I believe the call was transcribed or otherwise placed in the summary judgment record. I apologize as I search for it in the joint appendix. But that is certainly part of what – The district court did not rely on the tip at all in finding probable cause. Now if we believe that that's enough, that may be enough. We don't need to go on the same ground as the district court. The district court went entirely on the fact of the possessions being Ashley and didn't question whether that – there was a question as to Civil's belief. But it may be that the other is enough anyway. Yes, Your Honor. If that fact in combination with the other facts that – certainly in combination with the facts that the district judge did rely on, that would permit this court to affirm even if this fact was not considered necessary by the district court's analysis. Turning to the malicious prosecution point – Mr. Townsend, why don't you take another minute, minute and a half to finish up, okay? Okay. So just touching briefly on the malicious prosecution point, the standard for probable cause for malicious prosecution claim is only, according to this court, slightly higher than what is sufficient to sustain a false – sustain an arrest. And what plaintiff is trying to do here is to transform this into a standard of proof beyond a reasonable doubt. All the cases to which he cites are, in fact, after trial, and they concern an ultimate disposition of a case once the full record has been put before a jury. That's not the standard that should be applied here. Just returning briefly to the fair trial claim, I would just point out that even if the trial record and the jury instructions were not sufficient, as they were, Mr. Ashley's claim would also be foreclosed by both the Manuel decision and the McDonough decision from – decisions from the Supreme Court. On favorable termination, which relates to McDonough as well as the malicious prosecution, this court has consistently said that a dismissal for facial insufficiency is not a favorable termination. Those cases would foreclose a judgment as a matter of law. If the jury instructions were wrong, I don't believe those cases foreclose a new trial, do they? They do not, Your Honor, but if this court were sending this case back for a new trial, it would at least need to address the applicability of those decisions because otherwise that would be the first thing that this court would do. Or ask the district court to do so because the district court did not address them. That's correct, Your Honor. It would certainly be an efficient resolution to at least address the applicability. There's been essentially no briefing on that to any substantial extent, so if we were to agree, I think probably the best thing would be to let the district court consider them in the first instance. But they are, some of them are relevant. I mean, I love Hexie Humphrey, and so I'd love to get involved in it, but I'm not sure that's really there. Your Honor, if you would like supplemental briefing, just let us know. We are happy to address it. Thank you. Thank you very much. Mr. Townsend, I think that concludes your time. Thank you, Your Honors. All right. Thank you very much. Mr. Rickner, you have two minutes of rebuttal. Thank you, Your Honor. Just at the outset, if you would like additional briefing on that HEC issue, it's currently on appeal. It'll be fully briefed probably by Thanksgiving in Smalls v. City. That's 20 CV 1099 in the circuit. And it is, that issue is the only issue on appeal, so there's 40 pages of excellent briefing on this exact issue. But moving back to materiality, you know, I think it is established as a matter of law, and here's why. If you look at the circumstantial evidence instructions, you know, they really can't make it by just saying that maybe this was Ashley's space at one point, but he wasn't there and somebody else was next to the drugs. So if they went to trial on the original criminal court complaint, the district attorney's opening statement, closing statement, and a significant portion of their directive, Mr. Civil, would be about finding the drugs next to Mr. Ashley. So I think it's really indisputable. I'm sorry, I couldn't hear that. A significant portion would be about what? If they went to trial on the criminal case, on the original criminal complaint, the fact that Mr. Ashley was next to the drugs would have been part of the opening statement, Detective Civil's direct, and the closing statement because they needed to overcome the circumstantial evidence burden. So I think to say that it isn't material as a matter of law is inaccurate. I think it is material. And further, I think Detective Civil knew that this was material. I mean, he remembered this being inaccurate. He's, at the time, a six-year veteran of the narcotics squad. He knows that where you find the drugs with respect to the defendant is a very important thing. And I'd also like to say that there's this discussion of the multiple differences. There are really two things. There's the fabrication that we've been discussing, and then there's an alleged statement that Mr. Ashley said, you know, this is what happens when you let strange people into the apartment. Now, neither of those things could be fairly categorized as a typo. I'd also like to state that I didn't fully answer Judge Calabresi's question with regard to favorable determination, and we're relying on both Murphy and Lanning. Lanning says that purely procedural dismissals are not sufficient, and Murphy says that the problem with a dismissal for facial insufficiency is that the charges could be brought again. If you look at this case and what the judge actually said on the record, this was a dismissal with prejudice. The DA had lots of options to fix it. The facts really showed that Detective Civil wasn't being truthful, and the case got kicked out. So I think it's a dismissal with prejudice. They were told that they didn't like it, they had to appeal, not that they had another chance to amend or bring the charges again. So that is on the merits and that it's favorable to my client. And finally, going back to the probable cause analysis, one, that tip doesn't appear in the summary judgment record. As far as I can tell, I just reviewed the 56.1 statement. It wasn't part of the defendant's moving papers. But more importantly, it doesn't show up in the warrants application, and it doesn't show up in the district attorney's notes. This is the ETAB, and the district attorney sits down with the officer or over the phone and writes up the complaint based on the information that's provided, and they take notes in the process. And none of the evidence that Detective Civil relies on now, not the tip, not the closing, not the statement he made, none of that appears in the district attorney's notes. And I think that really does cast doubt into whether or not what Detective Civil was saying is accurate. And finally, on probable cause – I'm sorry. Go ahead. Please finish. Sorry. Finally, on probable cause, Mr. Ashley's testimony, this is testimony after the fact. This is information provided after the fact, not only after the arrest, but after the criminal case was over. And you cannot rely on that for probable cause determination, either with malicious prosecution or false arrests. We have to focus on what Detective Civil knew at the time, and what he says he knew is deeply suspect. Thank you, Your Honor. All right. Thank you very much. Thank you for your arguments. Well argued. We will reserve decision. Well argued. Thank you. Thank you, Your Honor.